UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTONIO VALLIN BRIDGES,

                Plaintiff,

v.

MICHIGAN PAROLE BOARD MEMBERS
et al.,

                Defendants.
_____/

Case No. 1:20-cv-1138

Honorable Robert J. Jonker

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual allegations

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County,

Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the members of the Michigan Parole Board and the Director of the MDOC.

Plaintiff's claims relate, in part, to the convictions that resulted in his incarceration. On December 1, 2015, Plaintiff pleaded guilty to three counts of false pretenses – $1,000.00 or more but less than $20,000, Mich. Comp. Laws § 750.218(4)(a), and admitted he was a third habitual offender, Mich. Comp. Laws § 769.11.  *Bridges v. Barrett*, No. 1:16-cv-1269 (W.D. Mich.) (Plea Tr., ECF No. 21-2, PageID.123-128.)[1]  In exchange for Plaintiff's plea, the prosecutor dismissed two counts charging Plaintiff with using a computer to commit a crime, Mich. Comp. Laws § 752.797(3)(d).  The parties also agreed that Plaintiff's minimum sentence would not exceed thirty months.

Plaintiff summarized the factual basis for his plea in his brief to the Michigan Court of Appeals:

> Defendant pretended that he was the landlord of 5009 Devonshire Avenue.  He made up 3 false leases, and leased that property to 4 different tenants.  The property was in foreclosure and vacant.  He took money orders from these individuals and cashed them.  In the case of each fraudulent lease, the amount received by the defendant as the 1st month's rent and security deposit was greater than $1000.

---

[1] The complaint before the Court is the sixth proceeding that relates to these convictions.  Petitioner has filed five habeas petitions and this civil rights complaint.  Petitioner's first habeas petition, *Bridges v. Barrett*, No. 1:16-cv-1269 (W.D. Mich.), (*Bridges I*) was dismissed for failure to exhaust state court remedies on March 17, 2017.  On the same day Petitioner signed the notice of appeal in *Bridges I*, he filed his second petition, *Bridges v. Harry*, No. 1:17-cv-287 (W.D. Mich.) (*Bridges II*).  *Bridges II* was dismissed on April 14, 2017, for failure to exhaust state court remedies. The third petition, *Bridges v. Harry*, No. 1:17-cv-612 (W.D. Mich.) (*Bridges III*) was dismissed on July 21, 2017. Petitioner never followed through by pursuing his state court appellate remedies.  *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx (search party name Bridges Antonio, visited November 25, 2020).  Petitioner was eventually released on parole.  Petitioner subsequently returned to prison after committing parole violations.  He filed his fourth habeas petition, *Bridges v. Mich. Parole Bd.*, No. 1:20-cv-483 (W.D. Mich.) (*Bridges IV*), relating to the parole board's consideration of inaccurate information to deny him parole, on May 26, 2020.  The Court dismissed that petition on June 16, 2020.  Petitioner filed his fifth habeas petition, *Bridges v. Rewerts*, No. 1:20-cv-1130 (W.D. Mich.) (*Bridges V*) on November 15, 2020.  Petitioner filed the instant complaint, which raises the same claims raised in *Bridges V*, two days later.  (Compl., ECF No. 1, PageID.4.)

*Bridges I* (Pet'r's Appl. for Leave to Appeal, ECF No. 21-4, PageID.165-166) (internal citations omitted.)  At the sentencing hearing held on December 16, 2015, the trial court sentenced Plaintiff to concurrent sentences of 2 years, 6 months to 10 years with 138 days of credit.  *Bridges I* (Sentencing Tr., ECF No. 21-3, PageID.150–151.)

Plaintiff was paroled on January 30, 2018.  (Compl., ECF No. 1, PageID.2.)[2]  While on parole, he was charged with resisting and obstructing a police officer and with fourth-degree criminal sexual conduct (CSC-IV).  He entered a plea to attempted resisting and obstructing a police officer.  The CSC-IV charge was dismissed by the trial court.  Plaintiff was found guilty of a parole violation based on his plea to the attempted resisting and obstructing charge.

On August 31, 2020, the parole board denied Plaintiff parole and required him to complete the Michigan Sex Offender Program (MSOP).  (*Id.*, PageID.2.)  Plaintiff now contends he was denied due process because the parole board is requiring him to complete the MSOP even though the CSC-IV charge was dismissed.  Therefore, Plaintiff's constitutional challenge does not relate to his convictions or his sentences as imposed; rather, it relates to his eligibility for parole. Moreover, it relates to a parole denial decision that is distinct from the parole denial decision that he challenged in *Bridges IV*.

In Michigan, generally, an inmate is eligible for parole when the inmate has served a period of time equal to the minimum sentence imposed by the court for the crime of which he

---

[2] According to the Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS), Petitioner's "Earliest Release Date" was January 30, 2018; his maximum discharge date is July 30, 2025.   *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=437651 (visited November 25, 2020).  This Court takes judicial notice of the information provided by a search of the MDOC OTIS website with regard to Petitioner. *See, i.e. Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249 *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821-22 n. 3 (E.D. Mich. 2004).

was convicted, less good time and disciplinary credits.  Mich. Comp. Laws § 791.234.  Plaintiff

has already served his minimum sentence.

Although Plaintiff correctly notes that his recent CSC-IV charge was dismissed, he

is wrong to suggest that his criminal history does not include sex offenses.  On April 29, 2004,

Plaintiff entered a plea of *nolo contendere* in the Ingham County Circuit Court to a charge of

assault with intent to commit a felony.[3]  *See Bridges v. Wolfenbarger*, No. 2:06-cv-10566 (E.D.

Mich.) (Plea Tr., ECF No. 31-5.)[4]  In exchange for the plea, charges of home invasion and second-

degree criminal sexual conduct (CSC-II) were dismissed.  Although the charge of CSC-II was

dismissed, the factual basis for that charge remained relevant because it was the "felony" Plaintiff

intended to commit when he assaulted the victim.  The factual basis for the plea was taken from

the preliminary examination of the victim and her housemates, Plaintiff claimed he could not

remember because he was too drunk.  The others, however, witnessed Plaintiff with his hand down

the pants of the female victim, who was passed out drunk on the living room couch, as Plaintiff

kissed her.  *Bridges v. Wolfenbarger*, No. 2:06-cv-10566 (E.D. Mich.) (Prelim. Exam. Tr., ECF

No. 31-3.)

---

[3] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of
guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt,
> any claims or defenses which relate to the issue of factual guilt are waived by such a plea.  Claims
> or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become
> irrelevant upon, and are subsumed by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo
> contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea
> of guilty.  Only those defenses which challenge the very authority of the state to prosecute a
> defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

[4] The numbers assigned to the state court record on the docket of the United States District Court for the Eastern
District of Michigan are off by one, i.e., the Plea Transcript dated April 29, 2004, shows at ECF No. 31-4 on the docket
but it is stamped as docket number 31-5.

Plaintiff contends that the Michigan Parole Board's insistence that he participate in the MSOP, and the resulting stigma, is a violation of his due process rights where the CSC-IV charge was dismissed.  Plaintiff does not seek damages.  Instead, he asks the Corut to "expunge the parole violations report related to the CSC 4th . . . and remove the sex offender program requirement."  (Compl., ECF No. 1, PageID.3).

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

5

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     There is no due process right to parole

In *Bridges IV*, Plaintiff claimed that he was deprived of procedural due process because the decision to deny his parole was based on inaccurate information.  *Bridges IV* (Pet., ECF No. 1, PageID.2) ("Procedural Due Process requires that any government hearing . . . be considered with accurate information to render fair, accurate decision making and results for both sides.").  Plaintiff's petition in *Bridges V* and the present complaint raise the same issue, the only difference is that the claim is specifically directed to the determination that Plaintiff is a sex offender or that he should be required to complete the MSOP.

To establish a procedural due process violation, a party must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).  Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty

interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

      In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

      Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442 U.S. at 11.  The Michigan Parole Board's failure or refusal to consider Plaintiff for or grant him parole, therefore, implicates no federal right.  In the absence of a liberty interest, Plaintiff cannot claim a violation of his procedural due process rights.  Plaintiff is well-aware of that flaw in his claim because it is precisely that flaw that resulted in the dismissal of *Bridges IV*.  It is also the flaw that resulted in dismissal of *Bridges v. Rubitschun*

*et al.*, No. 1:05-cv-624 (W.D. Mich.), where Plaintiff raised the same claim with regard to parole

denial on the conviction for assault with intent to commit a felony.

## IV.    Due process right to not being classified a "sex offender"

Plaintiff also contends it is wrong that he is required to participate in sex-offender

treatment when he is not in prison for a sex offense.  Plaintiff's contention is based on a faulty

premise.  He is not required to participate in sex-offender treatment.  He is doing so voluntarily in

the hope he will improve his chances of parole.  Where parole is not a protected liberty interest,

however, a condition or voluntary prerequisite of parole cannot enjoy due process protection either,

unless that condition or prerequisite is independently worthy of due process protection.  *See*

*Catanzaro v. Harry*, 848 F. Supp. 2d 780, 793-94 (W.D. Mich. 2012) ("Thus, the conditions of

Plaintiff's parole[, including participation in a sex-offender treatment program,] implicated

Plaintiff's right to due process only if they;  (1) exceeded the sentence imposed on Plaintiff 'in

such an unexpected manner as to give rise to protection by the Due Process Clause of its own

force,' *Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480 (1980)); or (2) imposed

'significant and atypical hardship in relation to the ordinary incidents of prison life.' *Id*.").

In *Catanzaro*, this Court concluded that a prisoner convicted of a sex offense was

not deprived of due process where he was compelled to participate in sex-offender treatment as a

condition of parole.  The prisoner, Catanzaro, compared his plight to that of the plaintiff in *Vitek*:

> In *Vitek*, prison officials determined that the plaintiff, a state prisoner, was suffering
> from a mental illness or defect that could not be treated at the prison facility, so
> they transferred him to a mental health hospital for treatment under a state statute
> allowing the transfer of such prisoners. *Vitek*, 445 U.S. at 484.  The plaintiff
> claimed that the prison officials violated his right to due process because their
> determination of illness was not accompanied by adequate notice or a hearing. *Id.*
> at 485.  The Court agreed, finding that state law and practice gave the plaintiff an
> objective expectation that he would not be transferred unless a proper determination
> was made regarding his mental state. *Id.* at 489-90.  Even apart from state law and
> practice, however, the plaintiff was entitled to due process because the
> consequences that he suffered were "qualitatively different from the punishment

characteristically suffered by a person convicted of crime." *Id.* at 493.  The Court noted that "involuntary confinement to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id.* Confinement to a "mental hospital" for treatment involves more than merely a loss of freedom; it also has a stigmatizing effect on the treated individual. *Id.* at 492. The Court concluded that, while "the restrictions on the prisoner's freedom of action at the [hospital] by themselves might not constitute the deprivation of a liberty interest . . . the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494.

*Catanzaro*, 848 F. Supp. 2d at 794.  This Court determined that "requiring a convicted sex offender to undergo rehabilitative treatment related to that offense is wholly different than requiring a prisoner to undergo involuntary health treatment." *Id.* at 795.  This Court recognized a distinction between imposing sex-offender classifications and requiring sex-offender treatment of those convicted of sex offenses and imposing that classification and requiring such treatment of those who were not. *Id.* at 796.  The Sixth Circuit Court of Appeals recently acknowledged the existence of that line as well, but that court drew the line at a slightly different place.  In *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), the court reversed the district court's dismissal of a claim like Plaintiff's where the plaintiff had "neither been convicted of a sex crime nor accused of any sexual wrongdoing while incarcerated." *Harper*, 2020 WL 4877518, at *1.

Plaintiff is not in the same position as the plaintiff in *Harper*; his position is more like the plaintiff in *Catanzaro*.  Despite Plaintiff's protests to the contrary, he has committed a sexual offense: assault with the intent to commit a felony—CSC-II.  He enjoyed all of the necessary procedural protections when he entered his plea.  Thus, to the extent Plaintiff is entitled to due process protection before being classified a "sex offender," he alleges nothing to support the inference that he did not receive the process he was due.

The MSOP is designed to offer treatment to "offenders with current sex offense convictions and histories of sexual offending."  https://www.michigan.gov/corrections/0,4551,7-

119-68854_68856_74016---,00.html (visited November 25, 2020).   Even if Plaintiff is not presently serving a sentence for a current sex offense conviction, he has a history of sexual offending.  The requirement that he participate in the MSOP suggests nothing more.

The Supreme Court has ruled that "States . . . have a vital interest in rehabilitating convicted sex offenders" and "acceptance of responsibility for past offenses" is a "critical first step" in a prison's rehabilitation program for such offenders. *McKune v. Lile*, 536 U.S. 24, 33 (2002).  Thus, Petitioner's further contention that he cannot be compelled to admit his offense as a condition of parole is likewise without merit.

## V.     Substantive due process

Alternatively, Plaintiff's arguments might be construed as an intent to invoke the protections of substantive due process.  "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002).  "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).  The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis*

*v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v.*
*Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

This Court rejected a similar argument in *Catanzaro*:

> Plaintiff's required participation in the RSOP as a condition for his parole does not
> shock the conscience; it serves the state's legitimate interest in protecting the
> members of the community from future sex offenses. *See McKune*, 536 U.S. at 33,
> ("Therapists and correctional officers widely agree that clinical rehabilitative
> programs can enable sex offenders to manage their impulses and in this way reduce
> recidivism").

*Catanzaro*, 848 F. Supp. 2d at 799.   Requiring Plaintiff to complete the MSOP under the
circumstances present here, likewise does not shock the conscience.   Accordingly, Plaintiff has
failed to state a claim for a substantive due process violation.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the
Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28
U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide
whether an appeal of this action would be in good faith within the meaning of 28 U.S.C.
§ 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same
reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes
that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369
U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good
faith. This is a dismissal as described by 28 U.S.C. § 1915(g). A judgment consistent with this
opinion will be entered.

Dated:    November 30, 2020            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE